# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-30047 |
| RADLAX GATEWAY HOTEL, LLC, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Bruce W. Black |

## <u>DEBTORS' JOINT CHAPTER 11 PLAN</u>

RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC hereby submit their

Joint Chapter 11 Plan.

Dated:  June 4, 2010

By:   /s/ Brian A. Audette
      PERKINS COIE LLP
      David M. Neff (ARDC # 6190202)
      Brian A. Audette (ARDC # 6277056)
      Eric E. Walker (ARDC # 6290993)
      131 S. Dearborn Street - Suite 1700
      Chicago, Illinois 60603-5559
      Telephone:  (312) 324-8400
      Facsimile:  (312) 324-9400

      *Counsel to the Debtors*

# TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS, INTERPRETATION AND EXHIBITS ............................... 1

     Section 1.01.   Definitions .................................................................... 1

     Section 1.02.   Rules of Interpretation ............................................ 13

     Section 1.03.   Exhibits .................................................................... 14

ARTICLE II      CLASSIFICATION OF CLAIMS AND INTERESTS ................................. 14

     Section 2.01.   Generally ................................................................. 14

     Section 2.02.   Unclassified Claims ................................................. 14

     Section 2.03.   Unimpaired Classes ................................................ 14

     Section 2.04.   Impaired Classes Entitled to Vote ........................... 14

     Section 2.05.   Impaired Classes Deemed to Reject ....................... 14

ARTICLE III      PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ............................................................................... 15

     Section 3.01.   Satisfaction of Claims ............................................. 15

     Section 3.02.   Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests ............................................. 15

     Section 3.03.   Administrative Claims ............................................. 15

     Section 3.04.   Priority Tax Claims ................................................. 16

     Section 3.05.   Class 1: Miscellaneous Secured Claims ................. 16

     Section 3.06.   Class 2: Miscellaneous Priority Claims ................. 16

     Section 3.07.   Class 3: Prepetition Senior Secured Claim ............. 16

     Section 3.08.   Class 4: Los Angeles County Tax Collector Claim ............. 17

     Section 3.09.   Class 5: General Unsecured Claims ....................... 17

     Section 3.10.   Class 6: Prepetition Senior Deficiency Claim ....... 17

     Section 3.11.   Class 7: Interests ................................................... 18

     Section 3.12.   Class 8: Insider Claims .......................................... 18

ARTICLE IV      ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN ............ 18

     Section 4.01.   Acceptance by Impaired Classes of Claims and Interests ...................... 18

     Section 4.02.   Voting Classes ........................................................ 18

     Section 4.03.   Ballot Instructions .................................................. 18

     Section 4.04.   Cramdown ................................................................ 18

# TABLE OF CONTENTS
(continued)

**Page**

**ARTICLE V        PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE
PLAN** ................................................................................................ 19

Section 5.01.    Timing of Distributions ................................................................. 19

Section 5.02.    Distributions to Holders of Allowed Claims .......................... 19

Section 5.03.    Liquidating Trust ........................................................................... 20

Section 5.04.    Delivery of Distributions ............................................................ 20

Section 5.05.    Method of Cash Distributions .................................................... 20

Section 5.06.    Failure to Negotiate Checks ....................................................... 20

Section 5.07.    Unclaimed Distributions ............................................................. 21

Section 5.08.    Limitation on Distribution Rights ............................................. 21

Section 5.09.    Fractional Dollars ......................................................................... 21

Section 5.10.    Compliance With Tax Requirements ........................................ 21

Section 5.11.    De Minimis Distributions ........................................................... 21

**ARTICLE VI       EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................... 22

Section 6.01.    Treatment of Executory Contracts and Unexpired Leases ..................... 22

Section 6.02.    Cure of Defaults for Assumed Contracts and Leases ............................. 22

Section 6.03.    Bar Date for Claims for Rejection Damages ........................... 22

Section 6.04.    Treatment of Rejection Claims .................................................. 22

**ARTICLE VII      MEANS FOR IMPLEMENTATION OF THE PLAN** ................................. 23

Section 7.01.    The Sale .......................................................................................... 23

Section 7.02.    Dissolution of the Debtors .......................................................... 23

Section 7.03.    Liquidating Trust ........................................................................... 23

Section 7.04.    Powers and Duties of the Liquidation Trustee ........................ 23

Section 7.05.    Obligations of the Purchaser ...................................................... 24

Section 7.06.    Application of Sale Proceeds ...................................................... 24

Section 7.07.    Application of Cash in the Real Estate Tax Escrow Reserve ................. 24

Section 7.08.    Application of Effective Date Cash ........................................... 24

Section 7.09.    Application of Creditor Profit Sharing Income ....................... 24

Section 7.10.    Approval of Agreements .............................................................. 24

Section 7.11.    Corporate Action .......................................................................... 24

Section 7.12.    Revesting of Assets ...................................................................... 25

LEGAL18273785.4

# TABLE OF CONTENTS

(continued)

**Page**

ARTICLE VIII    PRESERVATION OF CAUSES OF ACTION AND RIGHT TO
DEFEND AND CONTEST ........................................................................... 25

Section 8.01.  Preservation of Rights................................................................ 25

Section 8.02.  Rights of Action....................................................................... 25

Section 8.03.  Setoffs ................................................................................... 25

Section 8.04.  No Payment or Distribution Pending Allowance................................... 26

Section 8.05.  Resolution of Disputed Claims ................................................... 26

ARTICLE IX    CONDITIONS TO CONSUMMATION OF THE PLAN ........................... 26

Section 9.01.  Confirmation Order................................................................... 26

Section 9.02.  Conditions to Effective Date........................................................ 26

Section 9.03.  Waiver of Conditions to Consummation ................................................ 27

Section 9.04.  Effect of Failure or Absence of Waiver of Conditions Precedent to
the Effective Date of the Plan ................................................................... 27

ARTICLE X    EFFECTS OF CONFIRMATION ................................................ 28

Section 10.01. Discharge ............................................................................. 28

Section 10.02. Injunction ............................................................................. 28

Section 10.03. Exculpation ........................................................................... 29

Section 10.04. Releases............................................................................... 29

Section 10.05. Other Documents and Actions .................................................... 30

Section 10.06. Term of Injunctions or Stays...................................................... 30

Section 10.07. Preservation of Insurance.......................................................... 30

Section 10.08. Subordination Rights ............................................................... 31

Section 10.09. No Successor Liability .............................................................. 31

ARTICLE XI    RETENTION OF JURISDICTION .............................................. 31

Section 11.01. Exclusive Jurisdiction of Bankruptcy Court ..................................... 31

Section 11.02. Failure of Bankruptcy Court to Exercise Jurisdiction............................ 33

ARTICLE XII    MISCELLANEOUS PROVISIONS .............................................. 34

Section 12.01. Binding Effect of Plan .............................................................. 34

Section 12.02. Withdrawal of the Plan ............................................................. 34

Section 12.03. Final Order ........................................................................... 34

LEGAL18273785.4

# TABLE OF CONTENTS
(continued)

**Page**

Section 12.04. Modification of the Plan ........................................................................ 34

Section 12.05. Business Days ...................................................................................... 34

Section 12.06. Severability .......................................................................................... 34

Section 12.07. Governing Law ..................................................................................... 35

Section 12.08. Payment of Statutory Fees .................................................................... 35

Section 12.09. Post-Confirmation Operating Reports .................................................... 35

Section 12.10. Notices ................................................................................................. 35

Section 12.11. Filing of Additional Documents ............................................................ 35

Section 12.12. Section 1125 of the Bankruptcy Code .................................................... 36

Section 12.13. Section 1146 Exemption ....................................................................... 36

Section 12.14. Section 1145 Exemption ....................................................................... 36

Section 12.15. Time ..................................................................................................... 36

Section 12.16. No Attorneys' Fees ............................................................................... 36

Section 12.17. No Injunctive Relief .............................................................................. 36

Section 12.18. Continued Confidentiality Obligations ................................................... 37

Section 12.19. No Admissions or Waivers .................................................................... 37

Section 12.20. Entire Agreement .................................................................................. 37

Section 12.21. Waiver .................................................................................................. 37

Section 12.22. Bar Date for Professionals ..................................................................... 37

## INTRODUCTION

This joint chapter 11 plan (as amended or modified hereafter in accordance with its terms, the "Plan"), dated as of June 4, 2010, is proposed by RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC (each a "Debtor" and collectively, the "Debtors"). Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof. The Debtors have obtained Bankruptcy Court authority to have the Chapter 11 Cases jointly administered for administrative and procedural purposes. In addition, the Plan is premised upon the substantive consolidation of the Debtors. Claims against, and Interests in, the Debtors (other than Administrative Claims and Priority Tax Claims) are classified in Article II hereof and treated in Article III hereof.

## ARTICLE I
## DEFINITIONS, INTERPRETATION AND EXHIBITS

Section 1.01. <u>Definitions</u>. Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise. As used herein:

"Administrative Claim" means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals) of any of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtors' respective Estates or operating the businesses of the Debtors, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of their business, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; and (b) any fees or charges assessed against the Debtors' respective Estates under section 1930 of title 28 of the United States Code.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means, with reference to any Claim, (a) any Claim against either of the Debtors that has been listed by the Debtors in their Schedules, as such Schedules may have been amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date, provided that at the time of the Effective Date the Debtors have not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan; provided, further, that the term Allowed, with reference to any Senior Mechanic's Lien Claim shall mean any Mechanic's Lien Claim that is liquidated and determined to be senior to the Subordinate Mechanic's Lien Claims, the Prepetition Senior Secured Claim and any Miscellaneous Secured Claims by one or more Final Orders of any court of competent jurisdiction.

"Allowed Claim" means a Claim that is Allowed.

"Allowed Interest" means an Interest that is Allowed.

"Asset Management Fee" means one-half of one percent (0.5%) of Gross Operating Revenue for each Operating Year.

"Asset Purchase Agreement" means that certain Asset Purchase Agreement dated as of _____, 2010 by and among the Debtors, as sellers, and the Stalking Horse Bidder, as buyer, which provides for the sale of certain or substantially all of the Debtors' assets, or such other asset purchase agreement submitted at or prior to the Auction and subsequently determined by the Debtors pursuant to the Sale and Bid Procedures to be the highest or otherwise best offer for such assets.

"Auction" means the auction for the sale of the Debtors' assets to be held in accordance with the Sale and Bid Procedures.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estates or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which may be released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

"Ballot" means the forms of ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

-2-

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Illinois or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means:  (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a proof of Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court.

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Illinois are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"Causes of Action" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtors, including, but not limited to, the Avoidance Actions.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court on the Petition Date.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of:  (a) 75 Days after the Effective Date; (b) 75 Days after the date on which any Claim is Filed; or (c) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (a) and (b) above.

-3-

"Class" means each class, subclass or category of Claims or Interests as classified in Article II of the Plan.

"Confirmation" or "Confirmed" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Creditor" means any Person that is the Holder of any Claim against any of the Debtors.

"Creditor Profit Sharing Income" means, with respect to each Operating Year, the amount of Gross Operating Profit for such Operating Year in excess of the sum of the following amounts attributable to such Operating Year: (a) the Management Fee; (b) the Asset Management Fee; (c) Purchaser Taxes; (d) Insurance Costs; (e) the Reserve Fund Contribution for such Operating Year to the extent actually made; and (f) Purchaser's Return.

"Day(s)" means, unless expressly otherwise provided, calendar day(s).

"Debtors" shall have the meaning set forth in the Introduction.

"Deck" means that parcel of real estate adjacent to the Hotel upon which sits a partially constructed parking structure.

"Disallowed" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which:  (a) has been withdrawn, in whole or in part, by agreement of the Debtors or the Liquidation Trustee, as applicable, and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of the Bankruptcy Court or other court of competent jurisdiction. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

"Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

"Disallowed Interest" means an Interest, or any portion thereof, that is Disallowed.

"Disclosure Statement" means the Debtors' Disclosure Statement With Respect to the Joint Chapter 11 Plan, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Debtors, as the same may be altered, amended,

supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

"Disputed" means any Claim or Interest that has been neither Allowed nor Disallowed.

"Disputed Claim" means a Claim, or any portion thereof, that is Disputed. For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"Disputed Interest" means an Interest, or any portion thereof, that is Disputed. For purposes of the Plan, an Interest that has been neither Allowed nor Disallowed shall be considered a Disputed Interest.

"Effective Date" means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

"Effective Date Cash" means all of the Debtors' cash on hand as of the Effective Date, including, without limitation, the Cash in the Real Estate Tax Escrow Reserve.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"Estates" means the estates created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

"Exculpated Persons" means:  (a) directors, officers and employees of the Debtors, as of the Petition Date but prior to the Effective Date, and the Debtors' agents and professionals; (b) the Prepetition Senior Secured Lender (if Classes 3 and 6 vote to accept the Plan); (c) the Purchaser; (d) the Liquidation Trustee; and (e) to the extent such individuals are acting in such capacity, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in subclauses (a) through (e).

"FBR" means FBR Capital Markets & Co., the Debtors' financial advisor and investment banker retained by the Debtors pursuant to a Bankruptcy Court order entered in the Chapter 11 Cases on September 21, 2009.

"File, Filed or Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

-5-

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"GAAP" means generally accepted accounting principles as defined by the Financial Accounting Standards Board.

"General Unsecured Claims" means all Claims that are not Administrative Claims, Priority Tax Claims, Professional Fee Claims, Miscellaneous Secured Claims, Miscellaneous Priority Claims, the Prepetition Senior Secured Claim, Insider Claims or the Los Angeles County Tax Collector Claim.

"Gross Operating Profit" means with respect to any period of time, the amount by which Gross Operating Revenue for such period exceeds Operating Expenses for such period.

"Gross Operating Revenue" means with respect to any period of time, all revenue and income of any kind derived directly or indirectly from operations at the Hotel and properly attributable to the period under consideration (including rentals or other payments from licensees, lessees, or concessionaires of retail space in the Hotel, but not gross receipts of such licensees, lessees, or concessionaires), determined in accordance with GAAP and the Uniform System, except that the following shall not be included in determining Gross Operating Revenue:

(a)   applicable excise, sales, occupancy and use taxes, or similar government taxes, duties, levies or charges collected directly from patrons or guests, or as a part of the sales price of any goods, services, or displays, including gross receipts, admission, cabaret, or similar or equivalent taxes;

(b)   receipts from the financing, sale or other disposition of capital assets and other items not in the ordinary course of the Hotel's operations and income derived from securities and other property acquired and held for investment;

(c)   receipts from awards or sales in connection with any governmental taking, from other transfers in lieu of and under the threat of any governmental taking, and other receipts in connection with any governmental taking, but only to the extent that such amounts are specifically identified as compensation for alterations or physical damage to the Hotel;

(d)   proceeds of any insurance, including the proceeds of any business interruption insurance;

(e)   rebates, discounts, or credits of a similar nature (not including charge or credit card discounts, which shall not constitute a deduction from revenues in determining Gross Operating Revenue, but shall constitute an Operating Expense).

(f)   gratuities or service charges payable to Hotel personnel; and

(g)   interest earned on funds or accounts.

"Holder" means an Entity holding a beneficial interest in a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a holder of a beneficial interest in a Claim or Interest in such Class or of such type.

"Hotel" means the Radisson Hotel at Los Angeles International Airport, located at 6225 W. Century Blvd., Los Angeles, California.

"California Mechanic's Lien Law" means Division 3, Title 15, of the Civil Code of the State of California.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim which is Impaired.

"Impaired Interest" means an Interest which is Impaired.

"Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

"Insider Claims" means any Claim of an Insider against any of the Debtors, other than any Claim of an Insider that is a Claim for indemnification under the Debtors' organizational documents, employment agreements, internal policies or otherwise.

"Insurance Costs" means insurance premiums relating to liability and casualty coverage and business interruption insurance policies maintained with respect to the Hotel.

"Interests" means any and all equity interests, ownership interests or shares in the Debtors issued by the Debtors prior to the Petition Date whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"Liquidating Trust" means the trust to be established in accordance with Section 7.03 of the Plan.

"Liquidating Trust Agreement" means the agreement to be executed between the Liquidation Trustee and the Debtors establishing the Liquidating Trust, which will be filed with the Plan Supplement.

"Liquidating Trust Documents" means the Liquidating Trust Agreement and any ancillary documents relating thereto.

"Liquidation Trustee" means the trustee of the Liquidating Trust.

"Los Angeles County Tax Collector Claim" means the principal amount of the Secured Claim of the Los Angeles County Tax Collector for real estate taxes relating to the Real Property for any period prior to the Petition Date through and including the Effective Date, without interest, fees, or other applicable charges or costs.

"Management Fee" means three percent (3%) of Gross Operating Revenue for each Operating Year.

"Mechanic's Lien Claims" means all Secured Claims against the Real Estate for mechanic's Liens arising under or pursuant to the California Mechanic's Lien Law.  For clarity, Mechanic's Lien Claims shall be classified as Class 5 Claims (General Unsecured Claims).

"Miscellaneous Priority Claims" means any Claim against the Debtors entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Miscellaneous Secured Claims" means any Secured Claim other than the Secured Claims of the Prepetition Senior Secured Lender, the Mechanic's Lien Claims and the Los Angeles County Tax Collector Claim.

"Net Trust Assets" means the assets of the Liquidating Trust, minus all Cash to be distributed to Holders of Allowed Claims under the Plan and all reasonable costs and expenses incurred by the Liquidating Trustee in carrying out his or her duties.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than a Claim or an Interest that is Allowed.

"Operating Expenses" means all those ordinary and necessary expenses incurred in the operation of the Hotel, including Hotel personnel costs, the cost of maintenance and utilities, administrative expenses, the costs of advertising, marketing and business promotion and any amounts payable to the Hotel manager as set forth in the hotel management contract, all as determined in accordance with GAAP and the Uniform System.  Notwithstanding the foregoing description, the following shall not constitute Operating Expenses: (a) the Management Fee; (b) the Asset Management Fee; (c) Purchaser Taxes; (d) Insurance Costs; (e) Capital Expenditures; (f) rentals of real and personal property (except, with respect to personal property, rentals incurred directly in connection with revenue generating activities); (g) depreciation and

-8-

amortization of capitalized assets; (h) costs and expenses of Owner or Owner's personnel, including entertainment expenses, salaries, wages and employee benefits of Owner's employees, directors' fees and the expenses of directors or Owner's employees to attend board meetings; and (i) professional fees and costs, including the fees and disbursements of attorneys, accountants and appraisers, incurred directly or indirectly in connection with any category of expense that is not itself an Operating Expense.

"Operating Year" means each twelve-month period commencing on the Effective Date (or anniversary of the Effective Date, as the case may be) and ending on the day immediately preceding the anniversary of the Effective Date.

"Person" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

"Petition Date" means August 17, 2009, the date on which the Debtors Filed their respective petitions for relief commencing the Chapter 11 Cases.

"Plan" means this Joint Chapter 11 Plan dated as of June 4, 2010, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Debtors, including the Plan Supplement, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order and the terms and conditions of Section 12.04 of the Plan.

"Plan Supplement" means the supplement to this Plan to be Filed with the Bankruptcy Court on or before the date that is five (5) Days prior to the Confirmation Hearing.

"Prepetition Senior Deficiency Claim" means the Claim of the Prepetition Senior Secured Lender, excluding the Prepetition Senior Secured Claim.

"Prepetition Senior Secured Claim" means the Claim of the Prepetition Senior Secured Lender, but only to the extent that such Claim is a secured claim as determined by section 506(a)(1) of the Bankruptcy Code.

LEGAL18273785.4

"Prepetition Senior Secured Lender" means Amalgamated Bank, as Trustee of the Longview Ultra Construction Loan Investment Fund, in its capacity as administrative agent for itself and San Diego National Bank.

"Priority Tax Claim" means any and all Claims accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.  For clarity, the Los Angeles County Tax Collector Claim is not a Priority Tax Claim.

"Pro Rata Share" means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until disallowed).

"Professional Fee Claim" means a claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 506(c) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application made to the Bankruptcy Court by Professionals in the Chapter 11 Cases; provided, however, that in the case of the Debtors' primary bankruptcy counsel, Perkins Coie LLP, Professional Fee Claim shall include certain fees and expenses incurred prior to the Petition Date.

"Professionals" means any professional employed in these Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4), 506(c) or 1103 of the Bankruptcy Code.

"Property" means all assets or property of the Debtors' respective Estates of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtors, or acquired by the Debtors' respective Estates, as defined in section 541 of the Bankruptcy Code.

"Purchaser" means the purchaser under the Asset Purchase Agreement.

"Purchaser Taxes" means and all Purchaser's taxes, including ad valorem taxes on real property, personal property taxes and business and occupation taxes, relating to or assessed in connection with the ownership or operation of the Hotel, but not including income, franchise, or similar taxes imposed on Purchaser.

"Purchaser's Return" means a twelve percent (12%) return on any and all costs incurred by Purchaser in (a) acquiring the Property, (b) completion and opening of the parking structure, and (c) completion of any franchisor required property improvement plans, including, without limitation, construction costs, financing charges, design fees, architectural and engineering fees, legal fees, third-party consultant fees, costs of purchasing and installing furniture, fixtures and equipment and operating supplies and equipment, pre-opening expenses, costs of purchasing inventories, working capital and carrying costs associated with items (a) through (c) herein.

"Real Estate Tax Escrow Reserve" means the Cash escrow reserve the Debtors established for the payment of the Los Angeles County Tax Collector Claim.

"Real Property" means, collectively, the Hotel and the Deck.

"Reinstated or Reinstatement" means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence or which prohibit certain transactions or actions contemplated by the Plan, or conditioning such transactions or action on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"Rejection Claims" means claims of any non-Debtor counterparty to any unexpired leased of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code or pursuant to the Plan or the Asset Purchase Agreement.

"Releasees" means: (a) the directors, members, managers, officers and employees of the Debtors, in each case as of the Petition Date or that have become directors, members, managers, officers, or employees thereafter but prior to the Effective Date, and the Debtors' agents and professionals, (b) the Prepetition Senior Secured Lender (if Classes 3 and 6 vote to accept the Plan), (c) the Purchaser, (d) the Liquidation Trustee, and (e) to the extent such parties are deemed Releasees, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, advisors and professionals of the parties identified in subclauses (a) through (e); provided, however, that the foregoing released parties identified in subclauses (a) through (e) above shall be released only from liabilities arising out of actions taken in such capacity.

"Reserve Fund Contribution" means the contribution of five percent (5%) of Gross Operating Revenue to a separate account established to provide funds for Routine Capital Expenditures.

"Routine Capital Expenditures" means any (a) alterations, improvements, replacements, renewals and additions to any furniture, fixtures or equipment used in the ordinary course of operating the Hotel, and (b) certain repairs and maintenance to the Hotel which are

-11-

normally capitalized under GAAP (e.g., interior repainting, resurfacing interior walls, floors and ceilings, and resurfacing parking areas).

"Sale" means the sale of certain or substantially all of the Debtors' assets under or in connection with the Plan and the Asset Purchase Agreement.

"Sale and Bid Procedures" means the sale, bid and auction procedures set forth in the Sale and Bid Procedures Motion.

"Sale and Bid Procedures Motion" means a motion to be filed in the Bankruptcy Court seeking approval of, among other things, sale and auction procedures in connection with the Sale.

"Sale Documents" means the Asset Purchase Agreement, the Schedule of Assumed Contracts, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms. The Disclosure Statement will include a form of the Sale Documents of the Stalking Horse Bidder in substantially the form to be implemented on the Effective Date.

"Sale Proceeds" means $47,500,000 to be paid by the Purchaser to or for the benefit of the Debtors' estates pursuant to the Asset Purchase Agreement, plus any additional sums to be paid by the Purchaser pursuant to the Asset Purchase Agreement, by adjustment or otherwise, minus any sums to be credited to the Purchaser pursuant to the Asset Purchase Agreement, by adjustment or otherwise.

"Schedule of Assumed Contracts" means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Purchaser under or in connection with the Asset Purchase Agreement, which schedule shall be set forth in or as an attachment or exhibit to the Asset Purchase Agreement.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors in the Chapter 11 Cases, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

"Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtors' respective Estates has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

"Securities Act" means the Securities Act of 1933, as amended.

"Stalking Horse Bidder" means LAX Century & Sepulveda Hotel, LLC, a Delaware limited liability company.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

"Unclaimed Property" means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtors or the Liquidation Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Cases, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.06 of the Plan.

"Uniform System" means the latest edition of the Uniform System of Accounts for the Lodging Industry that is published by the Hotel Association of New York City, Inc. and approved by the American Hotel & Motel Association.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Northern District of Illinois.

"U.S. Trustee's Fee Claims" means any fees assessed against the Debtors' Estates pursuant to section 1930(a)(6) of title 28 of the United States Code.

Section 1.02.  <u>Rules of Interpretation</u>.  All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code).  Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.   The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.  The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity).  Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.  In computing any period of time prescribed or

-13-

allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 13.18 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

Section 1.03.   Exhibits.   Any Exhibits to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 2.01.   Generally.   Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.   A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.   A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

Section 2.02.   Unclassified Claims.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan.   The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

Section 2.03.   Unimpaired Classes.   The Plan classifies the following Unimpaired Claims that are not entitled to vote on the Plan.   Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims and is not entitled to vote to accept or reject the Plan:

Class 1 shall consist of all Miscellaneous Secured Claims.

Class 2 shall consist of all Miscellaneous Priority Claims.

Section 2.04.   Impaired Classes Entitled to Vote.   The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 3 shall consist of the Prepetition Senior Secured Claim.

Class 4 shall consist of the Los Angeles County Tax Collector Claim.

Class 5 shall consist of the General Unsecured Claims.

Class 6 shall consist of the Prepetition Senior Deficiency Claim.

Section 2.05.   Impaired Classes Deemed to Reject.   The Plan classifies the following Impaired Classes of Interests and Claims as Impaired Classes that are not entitled to

LEGAL18273785.4

vote to accept or reject the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of an Interest or Claim in these Classes is conclusively presumed to have rejected the Plan in respect of such Interests or Claims because the Plan does not entitle the Holders of such Interests and Claims to receive or retain any property under the Plan on account of such Interests or Claims.  Accordingly, Holders of such Interests and Claims are not entitled to vote to accept or reject the Plan:

Class 7 shall consist of all Interests in the Debtors.

Class 8 shall consist of all Insider Claims.

## ARTICLE III
## PROVISIONS FOR TREATMENT OF CLASSES OF
## CLAIMS AND INTERESTS

Section 3.01.  <u>Satisfaction of Claims</u>.  The treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against the Debtors and the Debtors' respective Estates, except as otherwise provided in the Plan or the Confirmation Order.

Section 3.02.  <u>Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests</u>.  Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.  In addition, Class 1 Claims and Class 2 Claims are classified as Classes of Claims that are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Class 3 Claims, Class 4 Claims, Class 5 Claims and Class 6 Claims are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims.  Class 7 Interests and Class 8 Claims are Impaired under the Plan and the Holders thereof will neither receive nor retain any property on account of such Interests and Claims and, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Interests and Claims are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Interests and Claims.

Section 3.03.  <u>Administrative Claims</u>.  Administrative Claims are Unimpaired. Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Claim in Cash from the Effective Date Cash (excluding the Cash in the Real Estate Tax Escrow Reserve), or in the case of any such unpaid Allowed Claim of FBR, from the Sale Proceeds, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to in writing by the Debtors or the Liquidation Trustee, as the case may be, and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and

conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors or the Liquidation Trustee, as the case may be, or as the Bankruptcy Court may order.

Section 3.04.  <u>Priority Tax Claims</u>.  Priority Tax Claims are Unimpaired.  Each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim:  (a) the amount of such unpaid Allowed Priority Tax Claim in Cash from the Effective Date Cash (excluding the Cash in the Real Estate Tax Escrow Reserve) on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed or (iii) a date agreed to by the Debtors or the Liquidation Trustee, as the case may be, and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Debtors or the Liquidation Trustee, as the case may be, or as the Bankruptcy Court may order.  Prior to the Effective Date, the Debtors shall have the right, in their sole discretion, to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature.

Section 3.05.  <u>Class 1:  Miscellaneous Secured Claims</u>.  Class 1 Miscellaneous Secured Claims are Unimpaired.  Each Holder of an Allowed Class 1 Miscellaneous Secured Claim shall receive, in the sole discretion of the Debtors or the Liquidation Trustee, as the case may be, in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) Cash equal to the amount of such Allowed Miscellaneous Secured Claim from the Effective Date Cash (excluding the Cash in the Real Estate Tax Escrow Reserve) on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Miscellaneous Secured Claim becomes Allowed, or (iii) a date agreed to by the Debtors or the Liquidation Trustee, as the case may be, and the Holder of such Class 1 Miscellaneous Secured Claim; (b) Reinstatement of such Allowed Miscellaneous Secured Claim; (c) the Property securing such Miscellaneous Secured Claim; or (d) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors or the Liquidation Trustee, as the case may be.

Section 3.06.  <u>Class 2:  Miscellaneous Priority Claims</u>.  Class 2 Miscellaneous Priority Claims are Unimpaired.  Each Holder of an Allowed Class 2 Miscellaneous Priority Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim:  (a) the amount of such unpaid Allowed Miscellaneous Priority Claim in Cash from the Effective Date Cash (excluding the Cash in the Real Estate Tax Escrow Reserve) on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 2 Claim becomes Allowed, or (iii) a date agreed to by the Debtors or the Liquidation Trustee, as the case may be, and the Holder of such Class 2 Miscellaneous Priority Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors or the Liquidation Trustee, as the case may be.

Section 3.07.  <u>Class 3:  Prepetition Senior Secured Claim</u>.  The Class 3 Prepetition Senior Secured Claim is Impaired.  As soon as reasonably practicable after the later of (a) the Effective Date or (b) the date on which such Class 3 Claim becomes Allowed, the Holder of the Allowed Prepetition Senior Secured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, (x) the Sale Proceeds in Cash

-16-

after satisfaction in full of any Allowed Administrative Claim of FBR and (y) the balance of any Effective Date Cash (excluding Cash in the Real Estate Tax Escrow Reserve) after satisfaction in full of any Allowed Administrative Claims, any Allowed Priority Tax Claims, any Allowed Class 1 Claims, any Allowed Class 2 Claims, any monetary cure amounts that are required to be paid to nondebtor parties to executory contracts and unexpired leases in connection with the assumption or assumption and assignment of such executory contracts and unexpired leases by the Debtors and, only to the extent that the Cash in the Real Estate Tax Escrow Reserve is insufficient, the Allowed Los Angeles County Tax Collector Claim.

Section 3.08.   Class 4:  Los Angeles County Tax Collector Claim.  The Class 4 Los Angeles County Tax Collector Claim is Impaired.  As soon as reasonably practicable after the later of (a) the Effective Date, (b) the date on which such Class 4 Claim becomes Allowed or (c) a date agreed to by the Debtors or the Liquidation Trustee, as the case may be, and the Holder of such Allowed Class 4 Claim, the Holder of the Allowed Los Angeles County Tax Collector Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim the amount of such unpaid Allowed Claim without interest in Cash from the Real Estate Tax Escrow Reserve (or Effective Date Cash in the event the funds in the Real Estate Tax Escrow Reserve are insufficient).

Section 3.09.   Class 5:  General Unsecured Claims.  Class 5 General Unsecured Claims are Impaired.  Each Holder of an Allowed Class 5 General Unsecured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, Cash equal to its Pro Rata Share of: (a) fifteen percent (15%) of the Creditor Profit Sharing Income, if any, for each of the first three (3) Operating Years immediately following the Effective Date, with such Cash distributions to the Holders of Allowed General Unsecured Claims occurring within ninety (90) Days following the expiration of the first (1st), second (2nd) and third (3rd) Operating Years, unless there is a dispute relating to the calculation of the amount of such Creditor Profit Sharing Income pursuant to Section 5.02 of the Plan, in which case the distribution(s) under this Section 3.09(a) shall be made within ninety (90) Days following (i) the final decision by the American Arbitration Association resolving a dispute under Section 5.02 of the Plan or (ii) the date of any written agreement between the Liquidation Trustee and the Purchaser resolving a dispute under Section 5.02 of the Plan; and (b) fifty percent (50%) of the Net Trust Assets, if any.  Notwithstanding anything contained herein to the contrary, in no event shall the cumulative aggregate amount of Cash available to be distributed to Holders of Allowed General Unsecured Claims under Section 3.09(a) of the Plan be less than $150,000.

Section 3.10.   Class 6:  Prepetition Senior Deficiency Claim.  The Class 6 Prepetition Senior Deficiency Claim is Impaired.  The Holder of the Allowed Prepetition Senior Deficiency Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, Cash equal: (a) five percent (5%) of the Creditor Profit Sharing Income, if any, for each of the first three (3) Operating Years immediately following the Effective Date, with such Cash distributions to the Holder of the Allowed Prepetition Senior Deficiency Claim occurring within ninety (90) Days following the expiration of the first (1st), second (2nd) and third (3rd) Operating Years, unless there is a dispute relating to the calculation of the amount of such Creditor Profit Sharing Income pursuant to Section 5.02 of the Plan, in which case the distribution(s) under this Section 3.10(a) shall be made within ninety (90) Days following (i) the final decision by the American Arbitration Association resolving a dispute

-17-

under Section 5.02 of the Plan or (ii) the date of any written agreement between the Liquidation Trustee and the Purchaser resolving a dispute under Section 5.02 of the Plan; and (b) fifty percent (50%) of the Net Trust Assets, if any.

Section 3.11.   Class 7:  Interests.  Class 7 Interests are Impaired.  Holders of Class 7 Interests shall not receive or retain any property under the Plan on account of such Interests.  On the Effective Date, all Interests shall be cancelled.

Section 3.12.   Class 8:  Insider Claims.  Class 8 Insider Claims are Impaired. Holders of Class 8 Insider Claims shall not receive or retain any property under the Plan on account of such Insider Claims.  On the Effective Date, all Insider Claims shall be extinguished.

# ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN

Section 4.01.   Acceptance by Impaired Classes of Claims and Interests.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if:  (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.  No Class of Interests is entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.

Section 4.02.   Voting Classes.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Classes 3, 4, 5 and 6 shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan.  Classes of Claims Unimpaired under the Plan (Miscellaneous Secured Claims (Class 1) and Miscellaneous Priority Claims (Class 2)) shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Class of Interests and Class of Claims that are Impaired under the Plan and whose Holders neither receive nor retain any property on account of such Claims and Interests under the Plan (Interests (Class 7) and Insider Claims (Class 8)) shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have rejected the Plan.  Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Section 4.03.   Ballot Instructions.  Each Holder of a Claim or Interest entitled to vote on the Plan will be asked to complete and return a Ballot to the Debtors and the Debtors will compile the votes so received.  Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

Section 4.04.   Cramdown.  If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except

-18-

subsection (8) thereof, the Debtors may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS
## UNDER THE PLAN

Section 5.01.   <u>Timing of Distributions</u>.   Except as specifically set forth in the Plan, distributions of Property will be made to Holders of Allowed Claims in accordance with Article III of the Plan.   If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article III of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, Section 6.02 of the Plan, and in each case, subject to Article VIII of the Plan.   Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter.

Section 5.02.   <u>Distributions to Holders of Allowed Claims</u>.   Except as otherwise provided herein, the Liquidation Trustee or the Debtors shall make all distributions required under the Plan in a manner consistent with the Plan.   Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan.   On the Effective Date or as soon as is reasonably practicable thereafter, the Debtors shall deliver the Effective Date Cash and the Sale Proceeds to the Liquidation Trustee.   Except in the event of a dispute as set forth below in this Section 5.02, within sixty (60) Days following the termination of the first (1st), second (2nd) and third (3rd) Operating Years following the Effective Date, the Purchaser shall deliver to the Liquidation Trustee twenty percent (20%) of the Creditor Profit Sharing Income, if any; provided, however, that if (a) there is no Creditor Profit Sharing Income for the first three (3) Operating Years following the Effective Date or (b) fifteen percent (15%) of the Creditor Profit Sharing Income for the first three (3) Operating Years following the Effective Date collectively totals less than $150,000, then the Purchaser shall deliver to the Liquidation Trustee Cash sufficient to ensure that the Purchaser's total distribution to the Liquidation Trustee pursuant to this Section 5.02 of the Plan totals no less than $150,000, which distribution, if any, shall occur within sixty (60) Days following the termination of the third (3rd) Operating Year following the Effective Date.   If any dispute arises as to the calculation of the amount of the Creditor Profit Sharing Income to be delivered to the Liquidation Trustee, the Liquidation Trustee and/or the Purchaser may submit such dispute to binding arbitration before the American Arbitration Association in Chicago, Illinois, in which case the Purchaser's delivery of the applicable Creditor Profit Sharing Income to the Liquidation Trustee pursuant to this Section 5.02 shall occur within sixty (60) Days following (x) the final decision by the American Arbitration Association resolving any such dispute or (y) the date of any written agreement between the Liquidation Trustee and the Purchaser resolving such dispute.   If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution under the Plan, the Liquidation Trustee or the Debtors, as appropriate and in lieu of making such distribution to such Holder,

-19-

may delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Section 5.03.   <u>Liquidating Trust</u>.   The Liquidating Trust shall be established to receive the Effective Date Cash, the Sale Proceeds, the applicable Creditor Profit Sharing Income, if any, and all other property of the Debtors not conveyed to the Purchaser in accordance with the Asset Purchase Agreement and to distribute such property and the proceeds of such property to Holders of Allowed Claims and Interests in accordance with the Plan.   The Liquidating Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d) and shall be treated as a grantor trust for United States federal income tax purposes.   The Debtors shall appoint the Liquidation Trustee, who shall have the authority to manage the day-to-day operations of the Liquidating Trust, including, without limitation, by disposing of the assets of the Liquidating Trust, appearing as a party in interest, calculating distributions, paying taxes and such other matters as more particularly described in Section 7.04 of the Plan and the Liquidating Trust Agreement.   Subject to the distributions required to be made under the Plan, expenses of the Liquidating Trust, including the expenses of the Liquidation Trustee and his representatives and professionals, will be satisfied from the assets of the Liquidating Trust and its proceeds, as set forth in the Liquidating Trust Agreement.

Section 5.04.   <u>Delivery of Distributions</u>.   Distributions to Holders of Allowed Claims shall be made by the Liquidation Trustee or the Debtors, as the case may be:  (a) at the last known addresses of such Holders or (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee, as appropriate.   If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Liquidation Trustee or the Debtors, as the case may be, are notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.

Section 5.05.   <u>Method of Cash Distributions</u>.   Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Liquidation Trustee or the Debtors, as the case may be.

Section 5.06.   <u>Failure to Negotiate Checks</u>.   Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) Days after the date of issuance.   Any amounts returned to the Liquidation Trustee in respect of such non-negotiated checks shall be held by the Liquidation Trustee.   Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued.   All amounts represented by any voided check will be held until the earlier of:  (a) one (1) month after date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.   Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.07 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtors or their respective assets, the Liquidation Trustee or the Liquidating Trust.

-20-

Section 5.07.   <u>Unclaimed Distributions</u>.   All Property distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided for in Section 5.06 of the Plan.   All Unclaimed Property will be retained by and will vest in the Liquidating Trust.   All full or partial payments made by the Debtors and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtors or the Liquidation Trustee pursuant to the Plan.   Nothing contained in the Plan shall require the Debtors or the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtors and any Claims filed in the Chapter 11 Cases.   Pursuant to section 1143 of the Bankruptcy Code, all claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.07 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors or their respective assets, the Liquidation Trustee or the Liquidating Trust.

Section 5.08.   <u>Limitation on Distribution Rights</u>.   If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

Section 5.09.   <u>Fractional Dollars</u>.   Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.   To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 5.07 of this Plan.

Section 5.10.   <u>Compliance With Tax Requirements</u>.   In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtors or the Liquidation Trustee, as appropriate, shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.   With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors or the Liquidation Trustee within thirty (30) Days from the date of such request, the Debtors or the Liquidation Trustee may, at their or its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

Section 5.11.   <u>De Minimis Distributions</u>.   No Cash payment of less than twenty-five ($25.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

LEGAL18273785.4

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.01.  <u>Treatment of Executory Contracts and Unexpired Leases</u>.  All executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that:  (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date, or (c) is listed on the Schedule of Assumed Contracts, provided, however, that the Debtors and the Purchaser shall have the right, at any time prior to the Confirmation Date, to amend the Schedule of Assumed Contracts in any manner set forth in the Asset Purchase Agreement, the Sale and Bid Procedures Motion, or by any other means approved by the Court, or to delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to this Section 6.01, or to add any executory contract or unexpired lease thereto, thus providing for its assumption and assignment pursuant to this Section 6.01 and the terms of the Asset Purchase Agreement.  The assumption, assumption and assignment, and rejection of executory leases and unexpired contracts under this Plan shall be governed by the terms of the Asset Purchase Agreement, the Sale Documents, the Sale and Bid Procedures, and other orders of the Bankruptcy Court.

Section 6.02.  <u>Cure of Defaults for Assumed Contracts and Leases</u>.  The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Asset Purchase Agreement, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by the terms and conditions of the Sale and Bid Procedures, the Asset Purchase Agreement, the Sale Documents, any order approving the Asset Purchase Agreement or authorizing the Sale, and other orders of the Court.  All such cure amounts shall be satisfied by the Debtors from Effective Date Cash.

Section 6.03.  <u>Bar Date for Claims for Rejection Damages</u>.  Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article VI of the Plan must be filed with the Bankruptcy Court no later than the later of (a) twenty (20) Days after the Effective Date, or (b) thirty (30) Days after the entry of an order rejecting such executory contract or unexpired lease.  Any Claim not filed within such time period shall be forever barred.  The Debtors and the Liquidation Trustee shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the terms of Section 8.05 of this Plan.

Section 6.04.  <u>Treatment of Rejection Claims</u>.  The Bankruptcy Court shall determine any objections Filed in accordance with Section 8.05 hereof at a hearing to be held on a date to be determined by the Bankruptcy Court.  Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 5 Claims in accordance with Section 3.09 of the Plan.

LEGAL18273785.4

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 7.01.  The Sale.  The Confirmation Order shall grant the relief requested in the Sale and Bid Procedures Motion and authorize a sale of certain or substantially all of the Debtors' assets under sections 365, 1123(b)(4), 1129(b)(2)(A)(iii), 1145 and 1146(a) of the Bankruptcy Code under the terms and conditions of the Asset Purchase Agreement.  Any Sale conducted via Auction shall be conducted in accordance with applicable orders of the Court, including, without limitation, interim or other orders approving the Sale and Bid Procedures Motion (prior to entry of the Confirmation Order).  Upon Confirmation, the Debtors shall be authorized to take any and all actions necessary to consummate the Sale.

Section 7.02.  Dissolution of the Debtors.  The Confirmation Order shall authorize:  (a) the dissolution of the Debtors, effective as of the Effective Date; and (b) the filing of certificates of dissolution (or the equivalent) with the Delaware Secretary of State.  On the Effective Date, each of the manager and officers of the Debtors shall be deemed to have resigned from all of their respective positions with the Debtors.

Section 7.03.  Liquidating Trust.  The Liquidating Trust shall be established to receive on the Effective Date the Effective Date Cash, the Sale Proceeds and all other assets of the Debtors not transferred to the Purchaser pursuant to the Asset Purchase Agreement, all of which assets shall vest in the Liquidating Trust on the Effective Date free and clear of all Claims, encumbrances and interests in accordance with section 1141 of the Bankruptcy Code, but subject to the rights of Holders of Allowed Claims to obtain the distributions provided for in this Plan.

Section 7.04.  Powers and Duties of the Liquidation Trustee.  The Liquidation Trustee shall administer the Liquidating Trust and its assets in accordance with this Plan, the Liquidating Trust Agreement, and the other Liquidating Trust Documents and shall be responsible for, among other things, making distributions required under this Plan.  From and after the Effective Date and continuing through the date of entry of a Final Decree, the Liquidation Trustee shall:  (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court; (b) have the authority to act on behalf of the Debtors in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents that have provided professional services to the Debtors prior to the Effective Date) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Bankruptcy Court.  Professionals and personnel retained or employed by the Liquidating Trust or the Liquidation Trustee need not be disinterested as that term is defined in the Bankruptcy Code.

-23-

Section 7.05.   Obligations of the Purchaser.  In accordance with the terms of the Plan the Purchaser shall, among other things, make one or more distributions to the Liquidation Trustee in accordance with Section 5.02 of the Plan.

Section 7.06.   Application of Sale Proceeds.  The Sale Proceeds shall be first distributed to satisfy any Allowed Administrative Claim of FBR in accordance with Section 3.03 of the Plan, then to the Holder of an Allowed Prepetition Senior Secured Claim in accordance with Section 3.07 of the Plan.

Section 7.07.   Application of Cash in the Real Estate Tax Escrow Reserve.  Cash in the Real Estate Tax Escrow Reserve shall be distributed to the Holder of the Allowed Los Angeles County Tax Collector Claim in accordance with Section 3.08 of the Plan.

Section 7.08.   Application of Effective Date Cash.   Effective Date Cash (excluding Cash in the Real Estate Tax Escrow Reserve) shall be first distributed to each Holder of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, nondebtor parties to executory contracts and unexpired leases to the extent monetary cure amounts are required to be paid to such parties in connection with the assumption or assumption and assignment of such executory contracts and unexpired leases by the Debtors and, only to the extent that the Cash in the Real Estate Tax Escrow Reserve is insufficient, to the Holder of the Allowed Los Angeles County Tax Collector Claim, in accordance with Sections 3.03, 3.04, 3.05, 3.06, 3.08 and 6.02 of the Plan.  The balance of the Effective Date Cash shall be distributed to the Holder of the Allowed Prepetition Senior Secured Claim in accordance with Section 3.07 of the Plan.

Section 7.09.   Application of Creditor Profit Sharing Income.   Creditor Profit Sharing Income, if any, shall be distributed to Holders of Allowed General Unsecured Claims and Allowed Prepetition Senior Deficiency Claims in accordance with Sections 3.09 and 3.10 of the Plan.

Section 7.10.   Approval of Agreements.   The solicitation of votes on the Plan shall be deemed a solicitation of the Holders of Claims for the approval of the Asset Purchase Agreement and the Sale in accordance with the Sale and Bid Procedures Motion.  Entry of the Confirmation Order shall constitute approval of such agreements and transactions and the Confirmation Order shall so provide.

Section 7.11.   Corporate Action.   The entry of the Confirmation Order shall constitute authorization for the Debtors to take or to cause to be taken all limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation, the execution and delivery of the Asset Purchase Agreement.  Subject to the terms and conditions of the Asset Purchase Agreement, all such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders or directors of the Debtors.  On the Effective Date, the Debtors' appropriate officers, managers, or other authorized Persons are authorized and directed to execute and deliver the agreements, documents and instruments

-24-

contemplated by the Plan, the Plan Supplement and the Sale Documents in the name and on behalf of the Debtors.

Section 7.12.  <u>Revesting of Assets</u>.  Except as otherwise expressly provided in the Plan, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all Property comprising the Estates of each Debtor not conveyed to the Purchaser under the Asset Purchase Agreement shall automatically vest in the Liquidating Trust, free and clear of all Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests of Creditors and equity security holders on the Effective Date, with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests being extinguished except as otherwise provided in the Plan.

## ARTICLE VIII
## PRESERVATION OF CAUSES OF ACTION AND
## RIGHT TO DEFEND AND CONTEST

Section 8.01.  <u>Preservation of Rights</u>.  Except to the extent that any Claim is Allowed during the Chapter 11 Cases or expressly by this Plan, the Asset Purchase Agreement, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtors or the Liquidation Trustee to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Cases shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors, the Liquidation Trustee or the Purchaser with respect to any Claim or Interest, including, but not limited to, all rights of the Debtors, Liquidation Trustee or the Purchaser to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

Section 8.02.  <u>Rights of Action</u>.  Except as otherwise provided in the Plan, the Asset Purchase Agreement or the Confirmation Order, all Causes of Action, including Avoidance Actions, shall automatically be transferred to and become the property of the Liquidating Trust.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee (as a representative of the Debtors' Estates) will have the right to enforce and prosecute such Causes of Action against any Entity that arose before the Effective Date other than those expressly conveyed, released or compromised as part of or pursuant to the Plan or the Asset Purchase Agreement.

Section 8.03.  <u>Setoffs</u>.  Except to the extent that any Claim is Allowed, the Debtors, the Liquidation Trustee or the Purchaser, as applicable, may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estates, the Debtors or the Liquidation Trustee may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtors, the Liquidation Trustee or the Purchaser of any such claims or Causes of Action the Debtors or the Liquidation Trustee may have against such Creditors, and all such claims and Causes of Action which are not expressly released, conveyed or compromised pursuant to the Plan, the Asset Purchase Agreement or the Sale Order shall be conveyed to the Liquidating Trust.

Section 8.04.  <u>No Payment or Distribution Pending Allowance</u>.  All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtors, the Liquidation Trustee or the Purchaser and the Holder of such Claim, by operation of law, by Final Order, or by this Plan.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

Section 8.05.  <u>Resolution of Disputed Claims</u>.  Unless otherwise ordered by the Court after notice and a hearing, the Liquidation Trustee shall have the right, on and after the Effective Date, to File objections to Claims and shall serve a copy of each such objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline.  The foregoing deadlines may be extended by order of the Court.  An objection to any Claim shall be deemed properly served on the Holder thereof if the Liquidation Trustee effects service in any of the following manners:  (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Cases.

## ARTICLE IX
## CONDITIONS TO CONSUMMATION OF THE PLAN

Section 9.01.  <u>Confirmation Order</u>.  The Confirmation Order shall not be entered unless and until all conditions to entry of the Confirmation Order set forth in the Asset Purchase Agreement have been met.

Section 9.02.  <u>Conditions to Effective Date</u>.  The Plan shall not be consummated, and the Effective Date shall not occur, unless and until each of the following conditions have occurred or have been duly waived (if waivable) pursuant to Section 9.03 below:

a)   the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate;

b)   the Confirmation Order shall have been entered and become a Final Order and shall not be stayed by order of a court of competent jurisdiction;

c)   all conditions precedent to the obligations of the Debtors and the Purchaser under the Asset Purchase Agreement have occurred;

d)   the transactions contemplated in the Asset Purchase Agreement have been consummated;

e)   the Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order), which shall have become a Final Order, authorizing and directing the Debtors to take all actions necessary or appropriate to enter into, implement, and

LEGAL18273785.4

consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

f) all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained;

g) the Debtors shall have appointed the Liquidation Trustee, the parties shall have executed the Liquidating Trust Agreement and the other Liquidating Trust Documents, and the Liquidation Trustee shall have received the Sale Proceeds and the Effective Date Cash;

h) no order of any court shall have been entered and shall remain in effect restraining the Debtors from consummating the Plan; and

i) each of the foregoing conditions shall have occurred (or been waived) on or before December 31, 2010.

Section 9.03.  <u>Waiver of Conditions to Consummation</u>.  The conditions to consummation in Section 9.02 (other than Sections 9.02(a), (b) and (d)) may be waived at any time by a writing signed by an authorized representative of the Debtors without notice or order of the Bankruptcy Court or any further action other than proceeding to consummation of the Plan. Notwithstanding the foregoing, the conditions to consummation in Section 9.02 and the Asset Purchase Agreement may only be waived in accordance with the terms of the Asset Purchase Agreement.

Section 9.04.  <u>Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan</u>.  In the event that one or more of the conditions specified in Section 9.02 of the Plan have not occurred (or been waived), upon notification submitted by the Debtors to the Bankruptcy Court:  (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estates shall revest in the Debtors' Estates; (d) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Asset Purchase Agreement shall become null and void; and (f) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

# ARTICLE X
# EFFECTS OF CONFIRMATION

Section 10.01. <u>Discharge</u>.    To the fullest extent permitted by applicable law (including, without limitation, section 105 of the Bankruptcy Code), and except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties, regardless of whether any Property shall have been distributed or retained pursuant to the Plan on account of such Claims.  Upon the Effective Date, and except as expressly contemplated in this Plan, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, debts (as such term is defined in section 101(12) of the Bankruptcy Code), Liens, security interests, and encumbrances of and against all Property of the respective Estates or the Debtors that arose prior to the Effective Date, including without limitation, all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) such Claim has been Allowed pursuant to section 502 of the Bankruptcy Code, or (b) the Holder of such Claim has voted to accept the Plan.  Further, as of the Effective Date, all entities, including, without limitation, all Holders of Claims or Interests, shall be barred and enjoined from asserting against the Debtors, the Liquidating Trust, the Liquidation Trustee, the Purchaser, their property or their successors or assigns any other or further Claims, debts, rights, Causes of Action, liabilities or Interests relating to the Debtors based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date, except for those obligations expressly created by, or reserved in, this Plan.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge and termination shall void any judgment obtained against the Debtors, the Liquidating Trust, the Liquidation Trustee or the Purchaser at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

Section 10.02. <u>Injunction</u>.

(a)         <u>Discharged Claims and Terminated Interests</u>.    Except as otherwise expressly provided for in the Plan or the Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 thereof, the entry of the Confirmation Order shall, provided that the Effective Date occurs, permanently enjoin all Persons that have held, currently hold or may hold a Claim or other debt or liability that is Impaired or discharged or an Interest or other right of an equity security holder that is Impaired or terminated pursuant to the terms of the Plan from taking any of the following actions against the Debtors, the Liquidating Trust, the Liquidation Trustee, the Purchaser, or the Property of any of the foregoing on account of any such discharged Claims, debts or liabilities or such terminated Interests or rights:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (d) asserting any setoff,

-28-

offset, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtors; and (e) proceeding in any manner in any place whatsoever, including employing any process, that does not conform to or comply with or is inconsistent with the provisions of the Plan.

(b)     Released Claims.    As of the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to Section 10.04 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against (i) the Debtors, (ii) the Liquidating Trust, (iii) any Releasee, or (iv) any Exculpated Person, or any of their respective Property, based on, arising from or relating to, in whole or in part, any act, omission, or other occurrence taking place on or prior to the Effective Date with respect to or in any way relating to the Chapter 11 Cases, all of which claims, demands, debts, rights, Causes of Action or liabilities shall be deemed released on and as of the Effective Date; provided, however, that with respect to the former directors, officers and employees of the Debtors, this injunction shall apply only to the enforcement of Claims, demands, debts, rights, Causes of Action or liabilities with respect to which such former directors, officers and employees would be entitled to indemnification from the Debtors under contract or law; and, provided further, however, that this injunction shall not apply to (a) any claims Creditors may assert under the Plan to enforce their rights thereunder to the extent permitted by the Bankruptcy Code or (b) any claims Creditors or other third parties may have against each other, which claims are not related to the Debtors, it being understood, however, that any defenses, offsets or counterclaims of any kind or nature whatsoever which the Debtors may have or assert in respect of any of the claims of the type described in (a) or (b) of this Section 10.02(b) are fully preserved.

Section 10.03. Exculpation.    None of the Debtors, the Liquidating Trustee, the Purchaser or any Exculpated Person shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Cases, Filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating this Plan, or the Property to be distributed under this Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtors or these Chapter 11 Cases, provided, however, that the foregoing exculpation shall not apply to any act that is determined by a Final Order to constitute gross negligence or willful misconduct.

Section 10.04. Releases.

(a)     Releases by Debtors.    Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, in their individual capacities and as debtors in possession, will be deemed to have forever released, waived and discharged the Releasees from any and all claims, obligations, suits, judgments, damages,

-29-

demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or the Liquidation Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan; provided, however, that the releases provided in this Section 10.04(a) shall not be applicable to any Holder of a Claim that timely votes to reject the Plan.

(b)        Releases by Holders of Claims and Interests.  Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of the Persons set forth below under the Plan and, if applicable, the Cash, securities, contracts, releases and other agreements or documents to be delivered in connection with the Plan, each Holder of a Claim that votes in favor of the Plan, and any Affiliate of any such Holder (as well as any trustee or agent on behalf of each such Holder) shall be deemed to have forever waived, released and discharged (i) the Debtors, (ii) the Liquidation Trustee, (iii) the Liquidation Trust, and (iv) the Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or Liquidation Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan.

Section 10.05.  Other Documents and Actions.  The Debtors are authorized to execute such documents and take such other action as is necessary or appropriate to effectuate the transactions provided for or contemplated by or in the Plan.

Section 10.06.  Term of Injunctions or Stays.  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 10.07.  Preservation of Insurance.  Except as necessary to be consistent with the Plan, the Plan and the discharge provided herein shall not diminish or impair (a) the enforceability of insurance policies that may cover Claims against the Debtors or any other Person or Entity or (b) the continuation of any workers' compensation programs in effect, including self-insurance programs.

Section 10.08. <u>Subordination Rights</u>.  Any distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other Creditor, and shall not be subject to levy, garnishment, attachment or other legal process by any Holder by reason of claimed contractual subordination rights, which rights shall be waived and the Confirmation Order shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan, in each case other than as provided in the Plan.

Section 10.09. <u>No Successor Liability</u>.  Except as otherwise expressly provided in the Plan or the Asset Purchase Agreement, the Debtors, the Liquidation Trustee and the Purchaser do not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other party relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on, or after the Effective Date.  The Liquidating Trust, the Liquidation Trustee and the Purchaser are not, and shall not be, successors to the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Liquidating Trustee and the Liquidation Trust shall assume the obligations specified in the Plan, the Liquidating Trust Agreement, the other Liquidating Trust Documents, and the Confirmation Order and the Purchaser shall assume the obligations specified in the Asset Purchase Agreement.

## ARTICLE XI
## RETENTION OF JURISDICTION

Section 11.01. <u>Exclusive Jurisdiction of Bankruptcy Court</u>.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Cases to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)     classify or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the Effective Date;

(c)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)     ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

LEGAL18273785.4

(e)      construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Liquidation Trustee in accordance with sections 524 and 1141 of the Bankruptcy Code following consummation;

(f)      determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan and the Plan Supplement) or the Confirmation Order, including any indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

(g)      hear any application of the Debtors or the Liquidation Trustee to modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and Section 12.04 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(h)      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(i)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(j)      determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Asset Purchase Agreement, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, the Asset Purchase Agreement or the Confirmation Order, except as otherwise provided in the Plan;

(k)      determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)      hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(m)      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Asset Purchase Agreement;

(n)      enter one or more Final Decrees closing each of the Chapter 11 Cases;

(o)      determine and resolve any and all controversies relating to the rights and obligations of the Liquidation Trustee in connection with the Chapter 11 Cases;

(p)      allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim (to the extent permitted under applicable law);

(q)      permit the Debtors (and the Liquidation Trustee or the Purchaser, to the extent provided for in the Plan, the Asset Purchase Agreement or the Liquidating Trust Agreement) to recover all assets of the Debtors and Property of their respective Estates, wherever located;

(r)      hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtors or the Debtors' respective Estates arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Cases, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(s)      hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed or commenced after the Effective Date that may be commenced by the Liquidation Trustee thereafter, including Avoidance Actions, proceedings with respect to the rights of the Liquidation Trustee to recover Property under sections 542, 543 or 553 of the Bankruptcy Code, or proceedings to otherwise collect or recover on account of any claim or Cause of Action that the Debtors may have had; and

(t)      hear any other matter not inconsistent with the Bankruptcy Code.

Section 11.02. <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.   If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtors, including with respect to the matters set forth above in Section 11.01 hereof, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

LEGAL18273785.4

# ARTICLE XII
## MISCELLANEOUS PROVISIONS

Section 12.01. <u>Binding Effect of Plan</u>.  The provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, the Estates, the Liquidation Trustee, the Liquidating Trust, the Purchaser, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

Section 12.02. <u>Withdrawal of the Plan</u>.  The Debtors reserve the right, at any time prior to Confirmation of the Plan, to withdraw the Plan.  If the Plan is withdrawn, the Plan shall be null and void and have no force and effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

Section 12.03. <u>Final Order</u>.  Except as otherwise expressly provided in the Plan or the Asset Purchase Agreement, any requirement in the Plan for a Final Order may be waived by agreement of the Debtors and the Purchaser or, after the Effective Date, the Liquidation Trustee upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

Section 12.04. <u>Modification of the Plan</u>.  The Debtors may alter, amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Debtors or the Liquidation Trustee may, so long as the treatment of Holders of Claims or Interests under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

Section 12.05. <u>Business Days</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 12.06. <u>Severability</u>.  Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal.  Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any

-34-

other provision of the Plan. The Debtors reserve the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

Section 12.07. <u>Governing Law</u>. EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF ILLINOIS.

Section 12.08. <u>Payment of Statutory Fees</u>. All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtors.

Section 12.09. <u>Post-Confirmation Operating Reports</u>. The Liquidation Trustee shall file quarterly operating reports until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Bankruptcy Cases.

Section 12.10. <u>Notices</u>. Any notice required or permitted to be provided under this Plan to the Debtors, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

> RadLAX Gateway Hotel, LLC
> c/o The Harp Group, Inc.
> 9501 Technology Boulevard, Ste. 401
> Rosemont, Illinois 60018
> Attn: Timothy Franzen
> Email: tfranzen@theharpgroup.com
>
> With a copy to:
>
> Perkins Coie LLP
> 131 S. Dearborn St., Ste. 1700
> Chicago, Illinois 60603
> Attn.: David M. Neff
> Email: dneff@perkinscoie.com

Section 12.11. <u>Filing of Additional Documents</u>. On or before substantial consummation of the Plan, the Debtors shall issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

**Section 12.12.** <u>Section 1125 of the Bankruptcy Code</u>.

(a)       The Debtors have, and upon Confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and (b) the Debtors (and each of their respective Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in any offer, issuance, sale, and purchase of any securities offered and sold under the Plan, and are not, and on account of any such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or any offer, issuance, sale, or purchase of any securities offered and sold under the Plan.

**Section 12.13.** <u>Section 1146 Exemption</u>.   To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtors or the Liquidating Trust, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**Section 12.14.** <u>Section 1145 Exemption</u>.   To the fullest extent permitted under section 1145 of the Bankruptcy Code, the issuance of any interests in the Liquidating Trust on or around the Effective Date shall be exempt from the registration requirements of Section 5 of the Securities Act and any and all federal, state and local laws requiring the registration or licensing of an issuer, underwriter, broker or dealer in such securities.

**Section 12.15.** <u>Time</u>.   Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

**Section 12.16.** <u>No Attorneys' Fees</u>.   No attorneys' fees will be paid by the Debtors or the Liquidation Trustee with respect to any Claim or Interest except as expressly specified herein or by order of the Bankruptcy Court.

**Section 12.17.** <u>No Injunctive Relief</u>.   No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

Section 12.18. <u>Continued Confidentiality Obligations</u>.   Pursuant to the terms thereof, any other Holder of a Claim or Interest, the Purchaser, and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

Section 12.19. <u>No Admissions or Waivers</u>.   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

Section 12.20. <u>Entire Agreement</u>.   The Plan (and any Exhibits to the Plan and the Plan Supplement) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.   The Debtors shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

Section 12.21. <u>Waiver</u>.   The Debtors reserve the right to waive any provision of this Plan to the extent such provision is for the sole benefit of the Debtors and/or their officers or directors.

Section 12.22. <u>Bar Date for Professionals</u>.   Applications for compensation for services rendered and reimbursement of expenses incurred by Professionals from the Petition Date through the Effective Date shall be Filed no later than ninety (90) Days after the Effective Date or such later date as the Bankruptcy Court approves.   Applications that are not timely Filed will not be considered by the Court.   The Liquidation Trustee may pay any Professional fees and expenses incurred after the Effective Date without any application to the Bankruptcy Court.

## CONFIRMATION REQUEST

The Debtors hereby request confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated: June 4, 2010

**RADLAX GATEWAY HOTEL, LLC**
**RADLAX GATEWAY DECK, LLC**


By: _____
    Timothy G. Franzen
    Authorized Agent and Representative

-37-