# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-30029 |
| RIVER ROAD HOTEL PARTNERS, LLC, et al., | ) | (Jointly Administered) |
| | ) | |
| | ) | Hon. Bruce W. Black |
| Debtors. | ) | |

**ORDER: (A) APPROVING PROCEDURES FOR THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING AN AUCTION;
(C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES;
<u>(D) APPROVING FORM OF NOTICE; AND (E) GRANTING RELATED RELIEF</u>**

THIS CAUSE COMING TO BE HEARD upon Debtors' Motion for an Order: (A) Approving Procedures for the Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief (the "Motion");[1] the Court having found that due and proper notice of the Motion has been given; the Court having found that it has jurisdiction over the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the record of the hearing to approve the Motion, and after due deliberation thereon, and good cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Bid Procedures, substantially in the form attached hereto as <u>Addendum 1</u>, are approved and the Debtors are authorized to take any and all actions necessary and/or appropriate to implement the Bid Procedures.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LEGAL18372903.2

3. The Debtors are authorized and directed to pay to the Stalking Horse the Break-Up Fee and/or Expense Reimbursement, as applicable, from the Debtors' cash on hand, whether or not such cash constitutes the Lenders' cash collateral.

4. None of the Debtors' secured creditors, including, without limitation, the Lenders, shall be permitted to submit credit bids for the purchase of the Debtors' Assets.

5. As provided in the Bid Procedures, the Debtors are authorized to conduct the Auction on _____, 2010 at ____ a.m. prevailing Chicago Time at the offices of Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, Illinois 60603.

6. The Assumption and Assignment Procedures substantially in the form attached hereto as <u>Addendum 2</u> are approved and the Debtors are authorized to take any and all actions necessary and/or appropriate to implement the Assumption and Assignment Procedures.

7. The form of Sale Notice attached hereto as <u>Addendum 3</u> is hereby approved as sufficient.

8. Within seven days after entry of this Order, the Debtors: (a) shall publish notice of the Plan Sale and the time and place of the proposed Auction in the Chicago Tribune and the National Edition of the Wall Street Journal and such other publications as the Debtors determine will reasonably promote the marketing and sale of the Assets; (b) shall provide a copy of the Sale Notice and this Order to (i) counsel to the Committee; (ii) the Office of the United States Trustee; (iii) counsel to the Debtors' Lenders; (iv) those parties that have requested notice of all pleadings in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002; and (v) any known prospective bidders at the Auction, including, but not limited to, those parties previously contacted by FBR or that have previously expressed any interest in the Assets to FBR; and (c) serve the Sale Notice by first class mail on all of the Debtors' known creditors.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

Dated: _____, 2010

_____
United States Bankruptcy Judge

# **ORDER ADDENDUM 1**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-30029 |
| RIVER ROAD HOTEL PARTNERS, LLC, | ) | (Jointly Administered) |
| et al., | ) | |
| | ) | Hon. Bruce W. Black |
| Debtors. | ) | |

**ADDENDUM 1 TO ORDER: (A) APPROVING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING AN AUCTION; (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; (D) APPROVING FORM OF NOTICE; AND (E) GRANTING RELATED RELIEF**

**BID PROCEDURES**

Set forth below is the general process to be employed by the Debtors with respect to the proposed Plan Sale of substantially all of the Debtors' assets (the "Assets"), as described more fully in the Debtors' Motion for an Order: (A) Approving Procedures for the Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief (the "Motion").[1]

    a.    **The Assets.** The Debtors are offering the Assets for sale pursuant to the Plan, which includes the Real Property. The Assets will be sold as a single lot and bids will not be accepted for less than all of the Assets. The Debtors shall retain all rights and title to their assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court at the Confirmation Hearing (defined below).

    b.    **The Bidding Process.** The Debtors shall in their sole discretion, but after consultation with their advisors, the Committee, and the Lenders: (i) determine whether any person is a Potential Bidder (hereinafter defined); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Debtors' business and assets; (iii) receive offers from Qualified Bidders (hereinafter defined); and (iv) negotiate any offer made to purchase the Assets (collectively, the "Bidding Process"). Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LEGAL18374160.1

    c.    **Participation Requirements**. Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtors in their sole discretion, but after consultation with the Committee and the Lenders, in order to participate in the Bidding Process each person (a "Qualified Bidder") must submit a bid that adheres to the following requirements (a "Qualified Bid"):

        i.    All bids must be submitted to Kevin Phillips and Jim O'Brien of FBR Capital Markets & Co., 237 Park Avenue, 19th Floor, New York, New York 10017, with copies to David M. Neff, Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, Illinois 60603, not later than 5:00 p.m. (prevailing Chicago Time) on or before _____, 2010 (the "Bid Deadline"). The Debtors shall immediately distribute by facsimile transmission or electronic mail a copy of each bid received to counsel for the Committee and the Lenders.

        ii.    All bids shall be in the form of an offer letter from a person or persons that the Debtors in their sole discretion, but after consultation with the Committee and the Lenders, deem financially able to consummate the purchase of the Assets, which letter states:

            (A)    that such Qualified Bidder offers to purchase the Assets upon the terms and conditions set forth in an executed asset purchase agreement (hard copy and an electronic version in Word format and blacklined against the Stalking Horse Agreement), together with its exhibits and schedules, including terms relating to the proposed purchase price and the time of closing (the "Proposed Agreement");

            (B)    that such Qualified Bidder is prepared to consummate the transaction on or before _____, 2010, following the Court's entry of an order confirming the Plan and approving the Plan Sale to the Successful Bidder (the "Confirmation Order");

            (C)    that such Qualified Bidder's offer is irrevocable until the earlier to occur of _____, 2010 or two (2) business days after the closing of the Plan Sale of the Assets; and

            (D)    which of the Debtors' unexpired leases and executory contracts are to be assumed in connection

-2-

        with the consummation of the Qualified Bidder's bid.

   iii. All bids shall be accompanied by a cash deposit into escrow with the Debtors of an amount equal to five percent (5%) of such bidder's proposed purchase price (the "Good Faith Deposit").

   iv. All bids shall be accompanied by satisfactory evidence, in the sole opinion of the Debtors, but after consultation with the Committee and the Lenders, of committed financing or other ability to perform all transactions contemplated by the Proposed Agreement.

   v. All bids must provide for funding of all payments required under the Plan to be funded by the purchaser.

   vi. All bids must identify the proposed management company for the Hotel.

   vii. All bids must identify the proposed brand for the Hotel if other than InterContinental.

   viii. Bids cannot contain any financing conditions or contingencies (other than those set forth in the Stalking Horse Agreement).

   ix. All bids must include information sufficient to determine whether the Potential Bidder can provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder.

d. **Due Diligence**.  The Debtors and FBR, as applicable, shall afford each Potential Bidder (hereinafter defined) due diligence access to the Assets. Due diligence access may include management presentations as may be scheduled by the Debtors, access to data rooms, on site inspections and such other matters which a Potential Bidder may request and as to which the Debtors, in their sole discretion, but after consultation with the Committee and the Lenders, may agree.  Neither the Debtors nor any of their affiliates (nor any of their respective representatives) are obligated to furnish any information relating to the Assets to any person except to Potential Bidders.  Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtors or their representatives.  To be a "Potential Bidder," each bidder must have delivered the following:

-3-

      i. an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

      ii. current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtors and their advisors in their sole discretion, demonstrating such Potential Bidder's ability to close the proposed transaction, to fund the Plan, to finance going concern operations, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder.

e. **"As Is, Where Is."** The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the Proposed Agreement of the Successful Bidder. Except as otherwise provided in the Proposed Agreement, all of the Debtors' right, title and interest in and to the Assets to be acquired shall be sold pursuant to the Plan free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against (collectively, the "Transferred Liens"), with such Transferred Liens to be satisfied in accordance with the Plan. Each bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection with the Assets, the Bidding Process or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder, in the applicable Proposed Agreement.

f. **Stalking Horse.** The Stalking Horse has submitted a Qualified Bid pursuant to the Stalking Horse Agreement, which Qualified Bid shall serve as a stalking horse bid (the "Stalking Horse Bid").

g. **Stalking Horse Bid Protections:** The Debtors shall either (i) provide a $1,260,000 break-up fee to the Stalking Horse, payable only in the event that an alternative transaction for the Assets closes and the Stalking Horse is not the Successful Bidder at the Auction, or (ii) reimburse the Stalking Horse for its actual out of pocket expenses, including reasonable attorneys'

-4-

fees and disbursements, up to a maximum of $250,000, payable only in the event that the Stalking Horse is the Successful Bidder and the Effective Date of the Plan shall not have occurred on or before December 31, 2010 or the Stalking Horse is otherwise entitled to terminate the Stalking Horse Agreement in accordance with the terms thereof before or after the Auction, other than pursuant to the due diligence termination right. Moreover, any initial competing Qualified Bids must exceed the aggregate consideration to be paid to or for the benefit of the Debtors' estates as set forth in the Stalking Horse Bid by at least $1,510,000.

h. **Credit Bid**: The Plan Sale is being conducted under sections 1123(a) and (b) and 1129(b)(2)(A)(iii) of the Bankruptcy Code, and not section 363 of the Bankruptcy Code. As such, no holder of a lien on any assets of the Debtors shall be permitted to credit bid pursuant to section 363(k) of the Bankruptcy Code.

i. **Auction.** If the Debtors receive more than one Qualified Bid prior to the Bid Deadline, the Debtors shall conduct an auction (the "Auction") at the offices of Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, IL 60603, on _____, 2010, beginning at __ a.m. (prevailing Chicago Time) or such later time or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids. The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bid Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine is relevant, the Debtors, in their sole discretion, may conduct the Auction in the manner they determine will achieve the maximum value for the Assets. At the Auction, the minimum initial bid against the Stalking Horse Bid must exceed the value of the Stalking Horse Bid by $1,510,000. Subsequent bids shall be made in minimum increments of $250,000.

As soon as practicable after the conclusion of the Auction, the Debtors, in their sole discretion, but after consultation with the Committee and the Lenders, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Plan Sale and confirming the Plan; and (ii) identify the highest or otherwise best offer for the Assets (the "Successful Bid") and any second-highest offer. The Debtors will present the Successful Bid to the Bankruptcy Court for approval at the Confirmation Hearing. The Debtors reserve all rights to not submit any bid which is not acceptable to the Debtors in their sole discretion, but after consultation with the Committee and the Lenders.

-5-

j. **Acceptance of Qualified Bids**. The Debtors shall sell the Assets to the Stalking Horse or the Successful Bidder, as the case may be, submitting the highest or otherwise best Qualified Bid at the Auction, after confirmation of the Plan and approval of such Qualified Bid by the Bankruptcy Court at the Confirmation Hearing and upon the Plan's effective date. The Debtors' presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at the Confirmation Hearing.

k. **The Confirmation Hearing**. After the conclusion of the Auction and the solicitation of the Plan, the Bankruptcy Court shall conduct a hearing (the "Confirmation Hearing") to confirm the Plan and approve the Plan Sale. At the Confirmation Hearing, the Debtors will seek entry of an order (the "Confirmation Order"), among other things: (i) confirming the Plan; (ii) authorizing and approving the Plan Sale to the Successful Bidder, as determined by the Debtors in accordance with the Bid Procedures, pursuant to the terms and conditions set forth in the Proposed Agreement submitted by the Successful Bidder (as such agreement may be modified prior to, during or after the Auction with the agreement of the Debtors); and (iii) exempting the sale and conveyance of the Assets from any transfer tax, stamp tax or similar tax pursuant to section 1146(c) of the Bankruptcy Code. The Confirmation Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court.

Following the entry of the Confirmation Order approving the Plan Sale, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid, as disclosed at the Confirmation Hearing, shall be deemed to be the Successful Bid and the Debtors shall be authorized to effectuate such sale without further order of the Bankruptcy Court.

l. **Return of Good Faith Deposit.** The Good Faith Deposits of all Qualified Bidders shall be retained by the Debtors and all Qualified Bids will remain open and irrevocable, notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a Successful Bid by a Qualified Bidder, until the earlier to occur of _____, 2010 or two (2) business days after the closing of the Plan Sale of the Assets. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which shall be retained by the Debtors as liquidated damages.

-6-

m. **Modifications.** The Debtors may, in their sole discretion, but after consultation with the Committee and the Lenders: (i) determine, in their business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with the representatives of the Committee, the Lenders or other significant constituent in connection with the Bidding Process and Bid Procedures; and (iii) reject at any time before entry of the Confirmation Order approving a Qualified Bid, any bid that, in the Debtors' sole discretion, but after consultation with the Committee and the Lenders, is: (x) inadequate or insufficient; (y) not in conformity with the requirements of the Plan, the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale; or (z) contrary to the best interests of the Debtors, their estates, their creditors and other parties in interest. At or before the Confirmation Hearing, the Bankruptcy Court, or, consistent with the purposes of the Bid Procedures to obtain the highest or otherwise best offer(s) for the Assets, the Debtors may, in their sole discretion, but after consultation with the Committee and the Lenders, impose such other terms and conditions as it or they may determine to be in the best interests of the Debtors' estates, their creditors and other parties in interest.

n. **Reservation of Rights:** In addition to their rights set forth in sections (i) and (m) above, the Debtors may, in their sole discretion, but after consultation with the Committee and the Lenders, modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Sale of the Assets if, in their reasonable judgment, such modifications would be in the best interests of the Debtors' estates and promote an open and fair sale process.

-7-

LEGAL18374160.1

# **ORDER ADDENDUM 2**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-30029 |
| RIVER ROAD HOTEL PARTNERS, LLC, | ) | (Jointly Administered) |
| et al., | ) | |
| | ) | Hon. Bruce W. Black |
| Debtors. | ) | |

**ADDENDUM 2 TO ORDER: (A) APPROVING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING AN
AUCTION; (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES;
(D) APPROVING FORM OF NOTICE; AND (E) GRANTING RELATED RELIEF**

**ASSUMPTION AND ASSIGNMENT PROCEDURES**

Set forth below are the assumption and assignment procedures (the "Assumption and Assignment Procedures") to be employed with respect to the proposed Plan Sale as described more fully in the Debtors' Motion for an Order: (A) Approving Procedures for the Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief (the "Motion").[1]

    a.    Within five (5) days prior to the Bid Deadline, the Debtors shall file a schedule of cure obligations (the "Contract and Cure Schedule") listing all unexpired leases and executory contracts that the Stalking Horse intends to assume (the "Assigned Contracts") and the amount, if any, that the Debtors contend is the amount needed to pay to cure any defaults with respect to such Assigned Contracts (the "Cure Amounts").

    b.    Upon such filing, a copy of the Contract and Cure Schedule and these Assumption and Assignment Procedures shall be served on each of the counterparties to the Assigned Contracts listed on the Contract and Cure Schedule.

    c.    The Debtors shall amend the Contract and Cure Schedule promptly after the completion of the Auction to update the information contained therein with respect to the Successful Bid, and shall serve an amended Contract and Cure Schedule on each of the counterparties to the Assigned Contracts listed thereon.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LEGAL18375442.1

d. Any objections ("Assignment Objections") to the assumption and assignment of any Assigned Contract, including, but not limited to, objections relating to adequate assurance of future performance or to the cure amount set forth in the Contract and Cure Schedule must be filed with the Bankruptcy Court and served upon the Debtors' counsel on or before 4:00 p.m. (prevailing Chicago Time) on the second business day before the Confirmation Hearing (the "Assignment Objection Deadline").

e. Any counterparty failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from: (i) objecting to the Cure Amount set forth on the Contract and Cure Schedule with respect to its Assigned Contract; (ii) seeking additional amounts arising under its Assigned Contract prior to the closing on the Plan Sale from the Debtors or the Successful Bidder; and (iii) objecting to the assumption and assignment of its Assigned Contract to the Successful Bidder.

f. Any Assignment Objections not consensually resolved prior to the Confirmation Hearing shall be heard at the Confirmation Hearing with any related Cure Amounts or adequate assurance of future performance being fixed by the Bankruptcy Court. All other objections to the proposed assumption and assignment of the Assigned Contracts will be heard at the Confirmation Hearing.

g. Except as may otherwise be agreed to by all parties to an Assigned Contract, on or before the Closing, the cure of any defaults under Assigned Contracts necessary to permit assumption and assignment thereof shall be by: (i) payment of the undisputed Cure Amount; and/or (ii) establishment of a reserve with respect to any disputed Cure Amount in an amount established by the Bankruptcy Court. Cure Amounts shall be paid by the Debtors from the Debtors' cash on hand.

# **ORDER ADDENDUM 3**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-30029 |
| RIVER ROAD HOTEL PARTNERS, LLC, | ) | (Jointly Administered) |
| et al., | ) | |
| | ) | Hon. Bruce W. Black |
| Debtors. | ) | |

**ADDENDUM 3 TO ORDER: (A) APPROVING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING AN AUCTION; (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; (D) APPROVING FORM OF NOTICE; AND (E) GRANTING RELATED RELIEF**

**NOTICE OF BID DEADLINE AND AUCTION IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that, on June 4, 2010, River Road Hotel Partners, LLC ("Hotel Partners") and River Road Expansion Partners, LLC ("Expansion Partners" and together with Hotel Partners, the "Debtors") filed a motion (the "Motion")[1] seeking approval of, among other things: (A) auction and bidding procedures (the "Bid Procedures") in connection with the sale (the "Plan Sale") of substantially all of the Debtors' assets (the "Assets"); (B) procedures to determine cure amounts and deadlines for objections with respect to certain contracts and leases proposed to be assumed and assigned by the Debtors; and (C) related relief with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"). The Assets consist of, among other things, the InterContinental Chicago O'Hare Hotel (owned by Hotel Partners) and a 48,600 gross square foot addition to the Hotel consisting of approximately 24,700 square feet of net meeting space (owned by Expansion Partners). By order dated _____ ___, 2010, the Bankruptcy Court approved the Bid Procedures attached as Addendum 1 to the Bid Procedures Order [Docket No. ___] (the "Bid Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to submit a Qualified Bid and to make an offer to purchase the Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order. The deadline to submit bids (the "Bid Deadline") is _____, 2010 at 5:00 p.m. (prevailing Chicago Time).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Order, the Debtors intend to conduct an auction (the "Auction") for the sale of the Assets at the offices of Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, IL 60603 on _____, 2010 beginning at _____ a.m. (prevailing Chicago Time), or at such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to seek the Bankruptcy Court's confirmation of the Plan and approval of the Plan Sale of the Assets at a hearing (the "Confirmation Hearing"), which the Debtors have requested to be held on _____, 2010 at ____ a.m. (prevailing Chicago Time) before the Honorable Bruce W. Black or any judge sitting in his stead, in Room 615 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604. The Debtors will provide separate notice of the Confirmation Hearing and related balloting and objection deadlines as formally scheduled by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the complete terms and conditions of the Motion, the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Copies of these pleadings may be obtained by written request to counsel to the Debtors, c/o Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, IL 60603, Attn: David M. Neff and Brian A. Audette. In addition, copies of the aforementioned pleadings may be found on the Bankruptcy Court's website, www.ilnb.uscourts.gov, and are on file with the Bankruptcy Court and available for inspection during regular business hours at the office of the Clerk of the Bankruptcy Court, Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604.

Dated: _____, 2010

          **PERKINS COIE LLP**
          David M. Neff
          Brian A. Audette
          131 S. Dearborn St., Ste. 1700
          Chicago, Illinois 60603
          Phone:  (312) 324-8400
          Fax:     (312) 324-9400
          dneff@perkinscoie.com
          baudette@perkinscoie.com

          *Counsel for the Debtors*